**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAKE GRUBER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| FERRARA CANDY COMPANY, | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiff, JAKE GRUBER ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his class action Complaint against the Defendant, FERRARA CANDY COMPANY, ("Defendant"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, and unjust enrichment, resulting from the illegal actions of Defendant, in intentionally labeling its candy products with false and misleading claims that they contain no artificial flavors, when Defendant's products contain synthetic Malic Acid. Malic Acid is a common food additive associated with tart flavors. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. Malic Acid (C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069. L-Malic Acid occurs naturally in various fruits. *Id*. D-Malic Acid does not occur naturally. *Id.* D-Malic Acid is most commonly found as a Racemic Mixture, DL-Malic Acid, which is commercially made from petroleum products.

3. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of artificial ingredients in those products.

4. By making false and misleading claims about the ingredients contained in their products Defendant impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

5. Therefore, Plaintiff has been deprived of his legally-protected interest to obtain true and accurate information about his consumer products as required by Illinois and Federal law.

6. As a result Plaintiff has been misled into purchasing candy products he would not have otherwise purchased.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District.

**PARTIES**

9. Plaintiff is an individual who was at all relevant times residing in Carol Stream, Illinois.

10. On information and belief, Defendant is an Illinois corporation whose principal place of business is located in Oakbrook Terrace, Illinois.

11. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of candy products.

**FACTS COMMON TO ALL COUNTS**

12. Defendant manufactures, advertises, markets, sells, and distributes candy products throughout Illinois and the United States under brand names which include, but are not limited to "Brach's," "Nerds," "Laffy Taffy," "Spree," "Bottle Caps," "Runts," and "Everlasting Gobstoppers."

13. During the Class Period the following list of products (the "Products") were advertised as containing no artificial flavors when they in fact contained synthetic Malic Acid:

    a. Rainbow Nerds;

    b. Peach and Wild Berry Nerds;

    c. Grape Nerds;

    d. Strawberry Nerds;

    e. Watermelon Nerds;

    f. Cherry Nerds;

    g. Doubled Dipped Cherry Lemonade and Watermelon Apple Nerds;

    h. Raspberry and Tropical Punch Nerds;

    i. Rainbow Nerds Rope;

j. Very Berry Nerds Rope;

k. Tropical Nerds Rope;

l. Big Chewy Nerds;

m. Sour Big Chewy Nerds;

n. Brach's Lemon Drops;

o. Cherry Laffy Taffy;

p. Grape Laffy Taffy;

q. Sour Apple Laffy Taffy;

r. Blue Raspberry Laffy Taffy;

s. Strawberry Laffy Taffy;

t. Cherry Stretchy Tangy Laffy Taffy;

u. Grape Stretchy Tangy Laffy Taffy;

v. Strawberry Stretchy Tangy Laffy Taffy;

w. Watermelon Stretchy Tangy Laffy Taffy;

x. Sparkle Cherry Stretchy Tangy Laffy Taffy;

y. Cherry Rope Laffy Taffy;

z. Grape Rope Laffy Taffy;

aa. Sour Apple Rope Laffy Taffy;

bb. Blue Raspberry Rope Laffy Taffy;

cc. Strawberry Rope Laffy Taffy;

dd. Mystery Rope Laffy Taffy;

ee. Original Spree;

ff. Chewy Spree;

   gg. Bottle Caps;

   hh. Runts;

   ii. Everlasting Gobstoppers; and

   jj. Chewy Everlasting Gobstoppers.

 14. During the Class Period Plaintiff purchased many of the Products.

 15. All of the Products contain artificial Malic Acid, but Defendant intentionally advertises and labels the Products as containing no artificial flavors.

 16. Malic Acid ($C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two stereoisomers, or different spatial arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069. L-Malic Acid occurs naturally in various fruits. *Id*. D-Malic Acid does not occur naturally. *Id.* D-Malic Acid is most commonly found as part of a racemic mixture, DL-Malic Acid, which is commercially made from petroleum products.

 17. Defendant includes DL-Malic Acid to help make its products taste tart and fruity.

 18. The Illinois Food, Drug, and Cosmetic Act ("IFDCA") also incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. 410 ILCS 620/21(d).

 19. Under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

 20. DL-Malic Acid is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

5

21. Under the FFDCA, a primary flavor identified on the front of a food product label is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

22. The FFDCA further defines a "characterizing flavor" as flavors identified by "… labeling, or advertising of a food [making] any direct or indirect representations with respect to the primary recognizable flavor, by word, vignette, e.g., depiction of a fruit or other means." 21 C.F.R. § 101.22(i).

23. If the food products contain any artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'… e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.' 21 C.F.R. § 101.22(i)(2).

24. Under the IFDCA, a food is misbranded if its labeling is false or misleading in any particular, including if it contains any artificial flavoring, coloring, or chemical preservative, unless it bears labeling stating that fact. 410 ILCS 620/11(a)(k).

25. The following are examples of the Products' labeling that explicitly violate FFDCA and IFDCA regulations:





26. The Products' DL-Malic Acid simulates, resembles, and reinforces their characterizing fruity flavors.

27. On information and belief, Defendant's efforts to design, manufacture, and disseminate its packaging and advertisements for its products originate at its headquarters in Illinois, and are distributed nationwide from Illinois.

28. Plaintiff is a long term customer of Defendant, and purchases Defendant's products regularly because Defendant's packaging claims that their products do not contain artificial flavors.

29. Plaintiff would not have been able to understand that the Products contained artificial flavoring without an advanced understanding of organic chemistry and without performing chemical analysis on the Products.

30. Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as containing no artificial flavors, Plaintiff could not have known that the Products contained artificial flavors.

31. Plaintiff was unaware that the Products contained artificial DL-Malic Acid when he purchased them.

32. Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as containing no artificial flavors.

33. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the foods and ingredients they ingest.

34. Plaintiff, the Class, and Sub-Class members, are not, and should not be, required to chemically test the food products they purchase to know the true contents of those products.

35. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "no artificial flavors", was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained artificial DL-Malic Acid unless Defendant expressly told them, as required by law.

36. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a. Lost money;

    b. Wasting Plaintiff's time; and

    c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within ten years prior to the filing of this Complaint.

38. Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within Illinois who purchased the Products within ten years prior to the filing of this Complaint.

39. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

40. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

41. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

42. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "no artificial flavors" on the front of the Products' packaging;

b. Whether the Class and Sub-Class members were informed of the artificial nature of the ingredients in the Products;

c. Whether the Products contain artificial flavoring;

d. Whether Defendant's conduct was unfair and deceptive;

e. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f. Whether Defendant breached express warranties to the Plaintiff, Class, and Sub-Class;

g. Whether the statement "No Artificial Flavors" is misleading or false;

h. Whether there should be a tolling of the statute of limitations; and

i. Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

43. As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

44. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

46. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class

members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

47. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

48. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

49. Defendants failed to comply with the requirements of the ILCFA, including but not limited to 815 ILCS 505/2 as to the Class and Sub-Class with respect to the above-alleged transactions.

50. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any

11

> deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

51. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

52. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 51 above as if fully reiterated herein.

53. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as he is a natural person.

54. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

55. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

56. Through its representation that the Products contain no artificial flavors, Defendant made false promises, misrepresentations, concealments, suppressions and omissions of material

facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions and omissions of material facts.

57. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

58. In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to 815 ILCS 505/2.

59. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs and attorneys' fees.

## COUNT II
## COMMON LAW FRAUD

60. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 59 above as if fully reiterated herein.

61. Through its false statements on the Products' packaging that the Products contained no artificial flavors, Defendant made false statements of material fact.

62. At the time Defendant made its statements that the Products contained no artificial flavors to Plaintiff, it knew, or reasonably should have known, that the statements described above

13

were false.

63. At the time Defendant made the statement to Plaintiff, it intended to induce Plaintiff to purchase the Products.

64. Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products contain artificial DL-Malic Acid.

65. As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## COUNT III
## UNJUST ENRICHMENT

66. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 65 above as if fully reiterated herein.

67. Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

68. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statement that the Products contain no artificial flavors.

69. Defendant's retention of the revenue it received from Plaintiff, the Class, and the Sub-Class is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, the Class, and the Sub-Class, because they would not have purchased the Products if they knew the Products contained artificial flavors.

70. Defendant's unjust retention of the benefits conferred on it by Plaintiff, the Class, and the Sub-Class entitles the Plaintiff, the Class, and the Sub-Class to restitution of the money

they paid to Defendant for the Products.

## COUNT IV
## BREACH OF EXPRESS WARRANTIES

71. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 70 above as if fully reiterated herein.

72. Defendant, as the manufacturer, designer, marketer, and seller of the Products, expressly warranted that the Products contain no artificial flavors on the front of the Products' packaging.

73. The Products' packaging also includes pictures of fruit, and names the flavors of the Products as grape, strawberry, raspberry, cherry, and other identifiable fruit flavors, further creating and reinforcing the express warranties that the Products contain no artificial flavors.

74. Defendant's express warranties that the Products contain no artificial flavors were part of the basis of the bargain between Plaintiff, the Class, the Sub-Class, and Defendant.

75. However, the Products contain DL-Malic Acid and do not conform to the express warranties Defendant made to Plaintiff, the Class, and the Sub-Class that the Products contain no artificial flavors.

76. As a direct result of Defendant's breach of the express warranties it made to Plaintiff, the Class, and the Sub-Class, they have been injured because they would not have purchased the Products on the same terms if they knew the Products contained artificial flavors, and they did not gain the same benefits they bargained for when purchasing the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

    a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

  b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

  c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive and unconscionable conduct herein;

  d.  Judgment against Defendant in an amount to be determined at trial;

  e.  An order for injunctive relief prohibiting such conduct by Defendant in the future;

  f.  Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

  g.  Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECFULLY SUBMITTED,

JAKE GRUBER

By: /s/ Todd M. Friedman
      Attorney for Plaintiff
      Illinois Attorney No. 6276496
      Law Offices of Todd M. Friedman, P.C.
      21550 Oxnard Street, Suite 780
      Woodland Hills, California 91367
      Phone: (323) 306-4234
      Fax: (866) 633-0228
      tfriedman@toddflaw.com

      /s/ David B. Levin
      Attorney for Plaintiff
      Illinois Attorney No. 6212141
      Law Offices of Todd M. Friedman, P.C.
      333 Skokie Blvd., Suite 103
      Northbrook, Illinois 60062
      Phone: (224) 218-0882
      Fax: (866) 633-0228
      dlevin@toddflaw.com

      /s/ Steven G. Perry
      Attorney for Plaintiff
      Illinois Attorney No. 6330283
      Law Offices of Todd M. Friedman, P.C.
      333 Skokie Blvd., Suite 103
      Northbrook, Illinois 60062
      Phone: (224) 218-0875
      Fax: (866) 633-0228
      sperry@toddflaw.com